UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JASON MICHAEL GIBSON,

    Petitioner,

    v.                                   CAUSE NO. 3:20-CV-31-PPS-MGG

WARDEN,

    Respondent.

OPINION AND ORDER

Jason Michael Gibson, a prisoner without a lawyer, filed a habeas corpus petition challenging a disciplinary proceeding at Miami Correctional Facility (MCF 19-05-0648) in which he was found guilty of possessing a controlled substance. (ECF 1.) Among other sanctions, he lost 30 days of earned-timed credits. (*Id.*)

The charge was initiated on May 29, 2019, when Sergeant H. Winegardner wrote a conduct report stating as follows:

> I, DHO H. Winegardner, was looking over dismissal reports from screening officer A. Goodridge. While inspecting the pages of case MCF 19-05-0244, I discovered a witness statement from Offender Gibson, Jason DOC 201380 N 442. In the hand written witness statement provided to case MCF 19-05-0244 Offender Gibson states that "I Jason Gibson 201380 take poss of the poss of the strips/orange drugs found in cell 441/442 NHU I had my drugs found in the cubbis plus on deck in bed area I throw them on Carr." The original conduct report states that the drugs in question where on the top of the shelving unit. Gibson clearly confesses that the drugs on the cubby were his own.

(ECF 9-1 (errors in original).) Sergeant Winegardner attached several documents from the earlier disciplinary case, which was initiated after drugs were found in the cell

shared by Gibson and fellow inmate Otis Carr. (ECF 9-2.) The underlying conduct report stated that on May 10, 2019, a search was conducted of the cell and five bags of a "green leafy substance consistent with synthetic marijuana known as Spice or K2" were found on top of a shelving unit in a common area of the cell.[1] (*Id.*) Also attached was a witness statement from Lieutenant E. Corner, one of the officers who conducted the search, stating that officers found bags containing a white powdery substance and suspected synthetic marijuana in Carr's bed area too. (ECF 9-2 at 2.) The white powdery substance subsequently tested positive for methamphetamine. (ECF 9-2 at 5.) The witness statement Gibson submitted on Carr's behalf was also provided, in which he stated as follows:

> I Jason Gibson 201380 take poss of poss of the strips/or[ang]e drugs found in cell 441-442 NHU I had my drugs found in the cubbis plus on deck in bed area I throw them on Carr.

(ECF 9-2 at 3 (errors in original).) A notice of confiscated property and photographs of the items recovered during the search were also included. (ECF 9-2 at 4-8.)

On June 6, 2019, Gibson was formally notified of the charge. (ECF 9-3.) He requested a lay advocate and one was appointed for him. (ECF 9-3; ECF 9-4.) He pled not guilty and requested witness statements from Carr, Lieutenant Corner, and Lieutenant B. Parkin. (ECF 9-3.) He wanted all three to explain "who [they] found it on," apparently referring to the drugs. (*Id.*) He did not request any physical evidence.

---

[1] It appears that Carr was originally charged because he was the only one present when the cell was searched. (ECF 9-2 at 1.) After Gibson involved himself in Carr's disciplinary proceeding, prison officials apparently had second thoughts about charging him too.

2

Statements were obtained from the three requested witnesses. Carr stated: "I do not know anything about this. I have nothing to do with it." (ECF 9-7 at 1.) Lieutenant Parkin stated, "I was not present at the DHB hearing," apparently referring to the earlier hearing on the charge against Carr. (*Id.* at 2.) When asked by the screening officer in an email who the drugs were found on, Lieutenant Corner stated, "I don't see why it makes a difference. Drugs in common area."[2] (ECF 9-7 at 3.) After several postponements, a hearing was held on August 21, 2019. (ECF 9-6.) The hearing officer reported that Gibson made the following statement in his defense: "Hell mother fuckin no." (*Id.*) Based on the evidence, the hearing officer found him guilty. (*Id.*) As a result, he lost 30 days of earned-time credits and temporarily lost telephone privileges. (*Id.*) Gibson's administrative appeals were denied. (ECF 9-8; ECF 9-9) Thereafter, he filed this petition.

When prisoners lose earned time credits in a disciplinary proceeding, the Fourteenth Amendment Due Process Clause guarantees them certain procedural protections: (1) at least 24 hours advance written notice of the charge; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563-66

---

[2] Lieutenant Corner was simultaneously asked to provide a witness statement in this case and in another disciplinary case pending against Gibson involving his possession of a cell phone charger. (ECF 9-7 at 3-4.) He provided one statement responding to both charges: "I don't see why it makes a difference. Drugs in common area. Charger in Gibson's mattress. He admitted it was in his hands and threw it to Carr." (*Id.* at 3.) The second half of the statement is not relevant here, but I include it for completeness.

(1974). To satisfy due process, there must also be "some evidence" to support the hearing officer's decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

I understand Gibson's first claim to be a challenge to the sufficiency of the evidence. (ECF 1 at 2.) To satisfy due process, there only needs to be "some evidence" to support the hearing officer's decision. *Hill*, 472 U.S. at 455. As the Seventh Circuit has explained:

> This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (quotation marks and citations omitted). A conduct report alone can provide sufficient evidence to support a finding of guilt. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). Likewise, circumstantial evidence can be sufficient to satisfy the "some evidence" test. *Meeks v. McBride*, 81 F.3d 717, 721 (7th Cir. 1996). Determining whether the "some evidence" test is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Hill*, 472 U.S. at 455. "Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56.

Gibson was found guilty of violating B-202, which prohibits "[p]ossession or use of any unauthorized substance controlled pursuant to the laws of the State of Indiana or the United States Code, possession of drug paraphernalia, possession/use of a synthetic

4

drug, or drug lookalike." (ECF 9-10 at 3.) The Indiana Department of Correction Disciplinary Code for Adult Offenders ("Disciplinary Code") defines "possession" as being "[o]n one's person, in one's quarters, in one's locker or under one's physical control." (ECF 9-11 at 5.) The Disciplinary Code further provides:

> [O]ffenders are presumed to be responsible for any property, prohibited property or contraband that is located on their person, within their cell or within areas of their housing, work, educational or vocational assignment that are under their control. Areas under an offender's control include, but are not limited to . . . shelving, storage area, bed and bedding materials in his/her housing assignment[.]

(*Id.*)

The staff reports, photographs, and positive field test provided sufficient evidence that Gibson possessed a controlled substance in his cell. Although he protests that the drugs were not found on his person, this is not a requirement to find an inmate guilty of possessing a prohibited item under the Disciplinary Code. He also seeks to back away from his witness statement submitted on behalf of Carr, characterizing it as only pertaining to suboxone strips—none of which were found—rather than to the drugs actually found in his cell. His statement is somewhat ambiguous, but it can be read to accept responsibility for the drugs found on the shelving unit (or "cubbies") and the drugs found in Carr's bedding area. In any event, it was for the hearing officer to weigh this evidence, and it is not my role to reweigh the evidence to make a new determination of guilt or innocence. *Webb*, 224 F.3d at 652; *McPherson*, 188 F.3d at 786.

Even discounting Gibson's witness statement, the staff reports documenting the search of his cell, the photographs, and the positive field test provide sufficient evidence

5

to support the finding that he was guilty of possessing a controlled substance in an area under his control. *See Hamilton v. O'Leary*, 976 F.2d 341, 346 (7th Cir. 1992) (discovery of contraband in area controlled by four inmates provided some evidence to support disciplinary action against one of them); *Romine v. Warden*, No. 3:17-CV-903-RLM-MGG, 2019 WL 330946, at *3 (N.D. Ind. Jan. 25, 2019) (evidence was sufficient where contraband was found in a room occupied by petitioner and one other inmate). Given that at least some of the drugs were found in plain sight on top of a shelving unit in the shared cell, the decision to hold Gibson responsible for the drugs cannot be considered arbitrary. *See House v. Daniels*, 637 F. App'x 950, 951 (7th Cir. 2016) (evidence was sufficient where six other inmates had access to the area where contraband was found and the circumstances made it unlikely that petitioner was unaware of its presence). This claim is denied.

I understand Gibson's remaining claim to be that his confession was made under duress, because Carr made him write it. (ECF 1 at 2.) The respondent argues that this claim is procedurally defaulted because Gibson did not raise it in his administrative appeals. (ECF 13 at 7-9.)

Before a petitioner can obtain federal habeas relief, he must exhaust all available state remedies, and the failure to do so constitutes a procedural default precluding relief on the merits. 28 U.S.C. § 2254(b)(1)(A); *Markham v. Clark*, 978 F.2d 993, 995-96 (7th Cir. 1992). Indiana does not provide judicial review of decisions by prison disciplinary bodies, so the exhaustion requirement in 28 U.S.C. § 2254(b) is satisfied if the petitioner pursues available administrative remedies. *Moffat v. Broyles*, 288 F.3d 978, 981-82 (7th

6

Cir. 2002). "Indiana offers two levels of administrative review: a prisoner aggrieved by the decision of a disciplinary panel may appeal first to the warden and then to a statewide body called the Final Reviewing Authority." *Id.* To properly exhaust, "a legal contention must be presented to each administrative level." *Id.* at 982; *see also Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007) (exhaustion under 28 U.S.C. § 2254(b)(1)(A) requires a habeas petitioner to "present both the operative facts and the legal principles that control each claim" in the state proceeding).

Here, the record shows that Gibson did not raise any claim about his confession having been made under duress in his administrative appeals. (*See* ECF 9-8 at 1.) He did not file a traverse addressing the respondent's procedural default argument, nor can I discern any ground for excusing his default.[3] Therefore, this claim is procedurally barred.

Assuming for the sake of argument that Gibson could overcome the procedural bar, this claim would not entitle him to federal habeas relief. As best as can be discerned, he believes the hearing officer should have not relied on his witness statement to find him guilty. In effect, he is challenging the sufficiency of the evidence.[4] As stated above, it was for the hearing officer to assess the relative weight of the

---

[3] By operation of N.D. IND. L.R. 47-2, Gibson was required to file his traverse by September 28, 2020. None was received by that deadline. Out of an abundance of caution, the court granted him an extension until February 8, 2021, to file a traverse. (ECF 10.) That deadline passed and still no traverse has been filed.

[4] It's not entirely clear whether Gibson is arguing that his witness statement was untrue, or simply whether it was made under less than ideal circumstances. In either case, I view this as an attack on the evidence. His argument does not implicate any other due process rights guaranteed by *Wolff*.

7

evidence, including the credibility of Gibson's prior statement and his later efforts to disavow or limit it. The hearing officer was entitled to credit the evidence of guilt and reject Gibson's denials. There was also other evidence of guilt, aside from the witness statement, that satisfied the lenient "some evidence" test. This claim is denied.

For these reasons, the court:

(1) DENIES the habeas corpus petition (ECF 1);

(2) DIRECTS the clerk to enter judgment in this case.

ENTERED: March 18, 2021.

/s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT